MAY LOMAX, Appellant, v. LEON W. LOMAX, Appellee.

DIVORCE: Cruelty—Evidence—Sufficiency. Evidence, revealing a quite large degree of mutual blame, reviewed, and held insufficient to justify a decree of divorce on the grounds of cruel and inhuman treatment.

*Appeal from Polk District Court.*—LAWRENCE DEGRAFF Judge.

WEDNESDAY, NOVEMBER 22, 1916.

REHEARING DENIED FRIDAY, JUNE 22, 1917.

ACTION for divorce, for custody of children and alimony. After a trial on the merits, the plaintiff's petition was dismissed, and she appeals.—*Affirmed.*

*J. G. Myerly,* for appellant.

*C. C. Bigger* and *Miller & Wallingford,* for appellee.

PRESTON, J.—The petition alleges that

DIVORCE: cruelty: evidence: sufficiency.

defendant had been guilty of such cruel and inhuman treatment as to affect plaintiff's health and endanger her life. The treatment, as appellant states it, is abusive language and threats of personal violence sufficient to put plaintiff in great bodily fear and restraint, so that she was compelled to leave defendant's home. Plaintiff asks the custody of the two girls, 8 and 3 years old, but does not ask the custody of the boy, aged 6. Alimony in the sum of $5,000 is asked. Plaintiff also avers that plaintiff owns in her own name one half of 90 acres of land, which defendant had before deeded to her, and asks that her title to the same be quieted in her.

No unusual or disputed questions of law are present-
ed. The only question is whether, under the evidence ad-
duced, plaintiff was entitled to a decree, and whether the
court erred in dismissing plaintiff's petition. Ordinarily,
we do not attempt to set out all the testimony, where the
only question is one of fact. It serves no useful purpose
to do so, and we shall refer to the circumstances only in a
general way. The trial court, after seeing and hearing the
witnesses, concluded that plaintiff had not established her
claim, and, after an examination of the record, we have
come to the same conclusion.

The plaintiff is 27 years of age, and defendant, 44.
They were married in 1906, when plaintiff was about 17.
Their married life was unhappy. Both were to blame. It
is claimed by appellant that, under the evidence, defendant
was of an extremely mercenary disposition, and that this
trait was one of the primary causes which brought on this
litigation. In fact, plaintiff in her testimony shows that
defendant is really penurious in regard to expenditures
for other than household and family expenses. This is
substantially admitted by counsel for defendant in argu-
ment. Defendant claims that he provided well the sub-
stantial necessaries for the comfort of his wife and chil-
dren, yet he admits that he should have afforded them more
of the luxuries and pleasures of life. Appellee contends
that this is not a ground for divorce. Defendant con-
tends that plaintiff was also looking after the dollars.

They separated in October or November, 1913, in Mis-
souri, where they were living, and plaintiff came to Des
Moines. At this time, a contract was entered into, by
which plaintiff was to go back home with defendant, and,
by the agreement, defendant was to convey to her 45 acres
of the 90-acre farm, being the part containing the build-
ings, and was to pay her $600 in money. Her notion seems
to have been that, if she had this land in her name, it would

make a difference in the way that she would be treated by defendant. $500 was paid at the time of the signing of the contract, but the other $100 has never been paid. There was a clause in the contract, as originally drawn, by which the parties should resume living together as man and wife. This was objected to by plaintiff, and that clause was erased. Plaintiff went back to Missouri with her husband, but they did not cohabit, and, as plaintiff claims, defendant began demanding back the deed and the money he had paid her.

Many of the circumstances testified to by plaintiff are denied by the defendant; others are explained, and some admitted, with some qualifications. Plaintiff claims that defendant would swear at her, and that he boasted of his intimacy with other women before his marriage with plaintiff. She claims that defendant struck her at one time, before they had been married a year. She claims that he had been using intoxicating liquor, and defendant admits that he did use liquor to some extent, but that, for two years or such a matter, he has not used it at all. She claims that defendant accused her of being intimate with other men without cause; that this occurred before their first separation, and after she returned to live with him. The night before she left the last time, she claims that the trouble was over some oysters she had bought for supper, and that defendant complained about the expense of it, and that a quarrel ensued, and she left. Plaintiff claims that, at one time, defendant threatened to shoot her with a .22 calibre rifle. Defendant's version of this is that, at the time, plaintiff had become greatly enraged at him, and, fearing that she would assault him again, as he claims she had before, he picked up a small target rifle and, as he says, shook it at her. He testifies that it was unloaded, and that he had no intention of shooting her. Some of the circumstances are testified to by the small children of the

parties. Ordinarily, the testimony of children under such circumstances in divorce cases is not given great weight, and some courts even think they ought not to be permitted to testify at all. Defendant seems to have been industrious and a very hard worker; in fact, plaintiff admits that she sometimes thought he worked too hard. Some other circumstances are testified to by plaintiff and her witnesses, but we shall not refer to them in further detail.

It should have been stated that defendant had been reared on a farm, and plaintiff had spent her life in a city. Soon after the parties were married, they took up their residence on the farm, and it may be that plaintiff was not pleased with her life on the farm. Defendant contends that, under the evidence, there were no serious differences between the parties until the year 1913, although he concedes that, at times, plaintiff, who possessed a high temper, became greatly enraged at defendant, and that defendant also became angry at plaintiff, but that these outbursts were mutual, and would pass away. As plaintiff attaches importance to defendant's disposition and treatment of her in this respect, it may not be out of place to set out some of her testimony as to her disposition and conduct. She admits that she got angry with him and said sharp words to him, and that she got angry with him about as often as he did with her, but says that she asked him to help her control her temper, and that she tried to help him; that once in a while she got angry with him when he was not angry with her. It seems that the parties had considerable difficulty and quarreling over one Wilkins. The defendant objected to plaintiff's receiving attentions from this man, and claims that this was the real cause of the separation. Their discussion of this party and their differences in regard to him resulted at one time in a serious quarrel. In her testimony on cross-examination, we find this:

"Q. Did you go after him with a stick of stove wood on one occasion? A. I did. Q. You assaulted him, hit him several licks? A. I did my best. Q. Is that the time he took hold of you and tried to choke you? A. No. Q. That time, he did not resist you—you got out of the way? A. He had a dipper of water in his hand when it started. He threw the water on me and picked up the bucket and threw it on me. I was armed with a stick of stove wood and he with a dipper of water and a bucket of water."

And she says that is the way he finally stopped her. Defendant's contention is, as before stated, that much of the trouble between the parties was because of the attentions the man Wilkins paid to plaintiff. Wilkins was the husband of defendant's sister. They lived in the neighborhood, and the two families visited back and forth frequently. Defendant contends that Wilkins began paying attention to plaintiff and was frequently in her company, and would accompany her to neighboring towns; that Wilkins was a man of dissolute and disreputable character; that, when defendant learned of the situation, he objected to plaintiff's being in the company of Wilkins and going to places with him, and, as stated, this resulted in heated discussions between them, plaintiff insisting that she was all right and could take care of herself, and defendant admitting that she was all right and expressing confidence in her, yet insisting that, owing to the character of Wilkins, their being together might cause talk among the neighbors. We find this in her cross-examination on this subject:

"Q. Isn't it a fact you told him you knew you were all right, and didn't he say, 'Yes, I know you are, but it will cause talk?' A. He may have said that; I don't remember. Q. Didn't you tell him you could take care of yourself, and you didn't care what the neighbors said? A.

Yes, I didn't care what—— Q. Didn't he insist you should not go with Wilkins; it would cause talk, as he had a bad reputation, and it would give you a bad name? A. Yes, sir."

We think plaintiff's conduct in this respect was not entirely as it should have been, and may have provoked the defendant to some of the acts and conduct about which she complains.

Without further discussing the testimony, it is our conclusion that, under the entire record, plaintiff has not shown herself entitled to a divorce. The situation is most unfortunate for both plaintiff and defendant, and the three small children. We have said that the plaintiff was at fault in some respects, and we can say from the record that defendant has not treated as he should the woman he vowed to protect. The court is not responsible for the unfortunate situation.

The judgment is—*Affirmed.*

Deemer, Weaver and Evans, JJ., concur.